UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-23114-CIV-KING

ILIANA RODRIGUEZ,

      Plaintiff,

v.

UNIVERSITY OF MIAMI d/b/a
UNIVERSITY OF MIAMI HOSPITAL,

      Defendant.

_____/

## FINAL SUMMARY JUDGMENT

**THIS MATTER** is before the Court upon Defendant University of Miami's Motion for Summary Judgment (DE #29), filed June 6, 2011. The Court is fully briefed in the matter.[1] Although many of the facts on the record are disputed, the absence of any evidence supporting one of the required elements of Plaintiff's claims nonetheless warrants the granting of summary judgment for Defendant.

## I.    Background

Plaintiff's claims in this case are based on alleged violations of the Family Medical Leave Act, 29 U.S.C. § 2611 et seq. ("FMLA"). Plaintiff alleges Defendant interfered with her rights under the FMLA, and retaliated against her for exercising her

---

[1] Plaintiff Iliana Rodriguez filed an Opposition to the Motion for Summary Judgment (DE #38) June 28, 2011, to which Defendant replied (DE #46) July 1, 2011.

statutory rights.  Specifically, she claims she was demoted and then fired because she took FMLA leave.

Plaintiff worked for Defendant as an administrative assistant for over a decade, beginning in 1997.  In May 2007, Plaintiff's supervisor was replaced by Francetta Allen, and Plaintiff thus became the administrative assistant to Francetta Allen.  Sometime thereafter, Plaintiff and Ms. Allen began to experience difficulty working together. According to Ms. Allen, Plaintiff was a "low performer" who did not meet Ms. Allen's expectations for an administrative assistant.  According to Plaintiff, Ms. Allen did not communicate any specific performance concerns to Plaintiff; rather, Ms. Allen stopped communicating with her at all, began to act coldly toward Plaintiff, and started to eliminate some of Plaintiff's work duties.  It is undisputed that Ms. Allen issued a written disciplinary warning to Plaintiff on May 14, 2009.  Plaintiff was disciplined for taking food from a conference room that was intended for participants in a meeting that Plaintiff did not attend, and was not invited to attend.  Plaintiff signed the warning without comment and did not contest the warning in any way.

During this time, the Plaintiff's deteriorating relationship with Ms. Allen caused her to worry that she would lose her job.  As a result of these worries, Plaintiff began to suffer from anxiety and panic attacks, and began taking medication.  Plaintiff's anxiety finally culminated in an outbreak of contagious dermatitis.  On October 13, 2009, Plaintiff requested medical leave under the FMLA due to the dermatitis, and her leave was approved by the University.  Plaintiff took the leave, and remained on FMLA leave

2

for the full twelve weeks permitted by law.  Accordingly, she did not return to work until January 4, 2010.

Plaintiff requested a meeting with Human Resources and Ms. Allen on her first day back at work.  The purpose of the meeting was to discuss the problems she experienced with Ms. Allen prior to taking leave.  Exactly what happened at the meeting is disputed.  According to the University, Plaintiff expressed that she did not want to work with Ms. Allen and requested that she be transferred to some other position with the University.  Plaintiff claims that she never requested a transfer, and that Ms. Allen decided to transfer Plaintiff.  In any event, the outcome of the meeting was that Plaintiff was transferred to a different office with the University.  She retained the same title, benefits, and pay.  However, Plaintiff's new job responsibilities were significantly more menial than her prior responsibilities.  In addition, the new position was temporary and Plaintiff was instructed to look for open permanent positions in the University system.

On February 15, 2010, after about a month and a half of working in the temporary position, Plaintiff met with Human Resources personnel again.  Plaintiff informed Human Resources that she had not found any open position she was interested in.  The University presented Plaintiff with a Separation Agreement, offering her $5,000 to resign.  Human Resources personnel told Plaintiff to take the Agreement home, review it, and tell them in a few days whether she would accept it.  She was also required to turn in her badge and keys at that time.  Plaintiff claims she was fired on February 15, 2010.  Defendant claims that she was retained as an employee until Plaintiff failed to show up

3

for a follow-up meeting to discuss the Separation Agreement. According to Plaintiff, no such meeting was ever scheduled. Plaintiff filed the Complaint in this matter about six months later, on August 30, 2010.

## II.   Legal Standard

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it is may determine the outcome under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen*, 121 F.3d at 646. If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must show specific facts to support that there is a genuine dispute. *Id.*.

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative

4

evidence demonstrating the existence of a triable issue of fact."). When the nonmoving party fails to sufficiently prove an essential element of its case, all other facts are rendered "immaterial." *Celotex*, 477 U.S. at 322-23.

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255. However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

## III. Discussion

Many of the facts on this record are disputed. For example, the Parties dispute whether Plaintiff requested to be transferred away from the supervision of Francetta Allen, as well as whether she was fired or resigned voluntarily. For the reasons explained below, these factual disputes are irrelevant because there is no evidence on this record of causation. More precisely, even accepting Plaintiff's version of events—that she was demoted involuntarily and fired—there is no evidence that Defendant took those actions *because* Plaintiff took FMLA leave.

### A. The FMLA

The FMLA provides employees a right to take time off in order to, among other things, care for their own health problems or the health problems of a close family member. 29 U.S.C. § 2612. Specifically, the FMLA provides, in relevant part: "An

5

eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Employees who take leave under the FMLA are entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced," or to an equivalent position. 29 U.S.C. § 2614(a)(1)(A)–(B).

To enforce those rights, the FMLA creates two types of claims for employees: interference claims and retaliation claims. 29 U.S.C. § 2615(a)(1)–(2). In an interference claim, an employee "asserts that his employer denied or otherwise with his substantive rights under the Act." *Strickland v. Water Works and Sewer Bd.*, 239 F.3d 1139, 1206 (11th Cir. 2001) (citing 29 U.S.C. § 2615(a)(1)). In a retaliation claim, an employee "asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Id.* (citing 29 U.S.C. § 2615(a)(2)). To state an interference claim, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Id.* at 1206–07. "In contrast, to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Id.* at 1207.

Here, Plaintiff asserts both an interference claim and a retaliation claim. Because she has failed to show that she was denied reinstatement and terminated for the reason that she took leave under the FMLA, both claims fail.

**B.     Count I:     Interference**

In general employees are entitled to be reinstated to the same or an equivalent position upon return from FMLA leave, but "this reinstatement right is not absolute." *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241 (11th Cir. 2010). Specifically, an employee cannot succeed on an interference claim if "the employee was discharged for independent reasons that were unrelated to the employee's leave." *Id.* Put another way, "an employee returning from FMLA leave is not entitled to any right, benefit, or position of employment other than any to which the employee would have been entitled had the employee not taken the leave. . . . If an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1208 (11th Cir. 2001).

In *Schaaf*, a manager for GlaxoSmithKline took FMLA leave for the birth of her child.   602 F.3d at 1239.   Prior to her leave, GlaxoSmithKline's Human Resources Department received complaints from the manager's subordinates about her "antagonistic and inflexible management style, chronic inaccessibility, poor communication skills, harsh and demanding demeanor, and tendency to play favorites." *Id.* Human Resources created an action plan for the manager, and she failed to satisfy its requirements. *Id.* at 1239–40.   During the manager's absence, an interim manager replaced her and "the region functioned significantly better." *Id.* at 1240.   Upon the manager's return from leave, Human Resources demoted her. *Id.* The manager sued GlaxoSmithKline under an

7

interference theory, arguing that but for the FMLA leave, she would not have been

demoted. *Id.* The Eleventh Circuit rejected this argument, and explained:

> The purpose of the FMLA is to allow individuals to temporarily put their
> careers on hold in order to tend to certain personal matters, like the care of
> a newborn child. Its purpose is not to aid an employee in covering up her
> work-related deficiencies. If an employee were demoted or discharged *for
> the reason that* she took FMLA leave, individuals would then be reluctant
> to take leave to care for their new children. . . . On the other hand, the
> statute's purpose is not implicated in the least if an employee's absence
> permits her employer to discover past professional transgressions that then
> lead to an adverse employment action against the employee. In such a
> situation, the employer is motivated not by the taking of the leave itself, but
> rather by prior deficiencies that, whenever they were discovered, would
> have prompted demotion or discharge whether or not the employee took
> FMLA leave.

*Id.* at 1242.

Just like the employee in *Schaaf*, Plaintiff here experienced performance problems

*before* taking FMLA leave. In her deposition, Plaintiff admitted the problems started in

June or July 2009, several months before she requested leave. Rodriguez Depo. 17:3–20;

Allen Depo. 6:6–19. At the meeting with Human Resources on Plaintiff's first day back

from leave, Plaintiff stated that she believed Ms. Allen was not happy with her

performance. *Id.* 50:5–10. Plaintiff admits that Ms. Allen laid out specific pre-leave

reasons for her disappointment with Plaintiff's performance, including Plaintiff's lack of

initiative, Plaintiff's failure to schedule meetings, and the need to correct meeting

minutes Plaintiff had taken. *Id.* 50:17–21; 52:18–21. Just like the employee in *Schaaf*,

Plaintiff here is not entitled to reinstatement because she performed poorly in her job

prior to taking leave. If Plaintiff had not taken FMLA leave, the University clearly could

8

have demoted or discharged her for this reason. She is "not entitled to any right, benefit, or position of employment other than any to which [she] would have been entitled had [she] not taken leave," and here, this Plaintiff would not have been entitled to retain her job under these circumstances had she not taken leave. *See Strickland*, 239 F.3d at 1208.

### C.     Count II:     Retaliation

Plaintiff's retaliation claim fails for similar reasons as her interference claim. Where, as here, there is no direct evidence of an FMLA defendant's discriminatory intent, courts apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Schaaf*, 602 F.3d at 1243. Under that framework, a plaintiff must first establish a *prima facie* case of retaliation by showing: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) the decision was causally related to the protected activity." *Id.* The causation element is met by showing the protected activity and the adverse employment action "are not wholly unrelated." *Brungart v. Bellsouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

Here, even accepting Plaintiff's version of events as true, Plaintiff has failed to establish the required causal link between her FMLA leave and her discharge. The only connection between Plaintiff's leave from October 2009 to January 4, 2010, and her alleged firing on February 15, 2010, is the temporal proximity between the two. However, "close proximity in time between the protected activity and the adverse employment decision does not, standing alone, establish the third element of a prima

9

facie case." *Strickland*, 239 F.3d at 1208 n.10.  Even if it did, Defendant has come forward with legitimate reasons for its actions, as discussed above.

The record evidence shows that Plaintiff was fired after a long history of friction with her supervisor, which began before Plaintiff took leave.  Plaintiff's deposition is replete with generalized descriptions of Ms. Allen's "nasty and [ ] aggressive" and "unprofessional" behavior toward Plaintiff, all of which occurred prior to Plaintiff's FMLA leave. Rodriguez Depo. 17:6–10.  Plaintiff testified that prior to Plaintiff's leave, Ms. Allen avoided Plaintiff and distanced herself from her.  *Id.* 19:17–19.  Plaintiff testified that Ms. Allen "always kind of brushed me off" and "gave me signs that she didn't want me to work in that place." *Id.* 20:24; 21:4–6.  For example, Plaintiff cited Ms. Allen's "body language" and "the hate in her look." *Id.* 22:2.  On one occasion, Ms. Allen allegedly "went through [Plaintiff's] desk without notice" when Plaintiff was not present. *Id.* 21:9–11.

Even accepting these facts as true, Plaintiff's evidence shows that she was terminated because her supervisor did not like her personally.  At best, Plaintiff's evidence shows:  (1) Ms. Allen acted unprofessionally toward Plaintiff prior to Plaintiff's taking leave; (2) Ms. Allen transferred Plaintiff to a position not equivalent to her earlier position upon her return from leave; and (3) Ms. Allen finally fired her.  These facts are, of course, disputed.  However, even if at trial the jury believed all of Plaintiff's factual evidence, those facts do not support any inference that Defendant terminated Plaintiff

*because* she took FMLA leave.   Accordingly, there is no evidence on this record to support the causation element of Plaintiff's retaliation claim.

**IV.   Conclusion**

After careful review of the record and for the foregoing reasons, it is

**ORDERED, ADJUDGED and DECREED** that Summary Judgment **(DE #29)** be, and the same is, hereby is **GRANTED** in favor of Defendant University of Miami**.**

**DONE AND ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 19th day of August, 2011.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:
*Counsel for Plaintif*

**Robert Newton Harris**
The Harris Law Firm Group, P.A.
777 Brickell Avenue
Suite 1114
Miami, FL 33131
305-536-6131
Fax: 536-6130
Email: robert@harrislawinfo.com

11

***Counsel for Defendant***

**Eric David Isicoff**
Isicoff Ragatz & Koenigsberg
1200 Brickell Avenue
Suite 1900
Miami, FL 33131
305-373-3232
Fax: 305-373-3233
Email: Isicoff@irlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Teresa Ragatz**
Isicoff Ragatz & Koenigsberg
1200 Brickell Avenue
Suite 1900
Miami, FL 33131
305-373-3232
Fax: 373-3233
Email: Ragatz@irlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susan Virginia Warner**
Isicoff Ragatz & Koenigsberg
1200 Brickell Avenue
Suite 1900
Miami, FL 33131
Email: warner@irlaw.com